IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY D. SMITH MIMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:21-cv-1799-M-BN |
| | § | |
| JP MORGAN WA MU, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Mary D. Smith Mims filed a *pro se* complaint appearing to relitigate
the subject matter of a case that she filed with counsel in state court concerning her
home. *See* Dkt. No. 3. Chief Judge Barbara M. G. Lynn referred Mims's case to the
undersigned United States magistrate judge for pretrial management under 28
U.S.C. § 636(b) and a standing order of reference.

The Court granted Mims's motion for leave to proceed *in forma pauperis*, *see*
Dkt. Nos. 4, 7, thus subjecting her claims to judicial screening under 28 U.S.C. §
1915(e)(2)(B).

To facilitate this screening, after Mims filed an amended complaint as a matter
of course, *see* Dkt. No. 6, the Court entered a Notice of Deficiency and Order Requiring
Second Amended Complaint informing Mims that

> the Court enters this order to set out deficiencies in Mims's amended
> complaint [Dkt. No. 6] that prevent her case from proceeding; to allow
> her leave to cure the deficiencies; and to warn her, that, if she does not
> cure these deficiencies, the undersigned will recommend that this action
> be dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B) and/or
> Federal Rule of Civil Procedure 41(b).

Mims's amended complaint appears to allege that several individuals "stole equity out of [her] home" and then "lease[d] it back to [her]." Dkt. No. 6 at 2. She attaches records from a prior state court proceeding and requests that the Court "take a look [to] see if [the Court] can help [her]." *Id.*

Because her complaint lacks enough facts to allege a plausible claim, the Court requires Mims to file by **September 13, 2021** a second amended complaint using the form complaint attached to this order. The factual allegations to be included in this second amended complaint must comply with the pleading standards set out below.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, but a plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*

And, to survive dismissal, a plaintiff must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that a plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."))).

Put differently, a plaintiff, through his or her complaint, must provide the Court enough factual content to demonstrate an entitlement to relief. *Compare Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."), *with Robbins*, 519 F.3d at 1247 ("The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." (quoting *Twombly*, 550 U.S. at 556)).

Further, insofar as Mims requests that this Court directly review state court rulings, her amended complaint would appear to implicate the *Rooker-Feldman* doctrine, which,

"[a]bsent specific law otherwise providing, ... directs that federal district courts lack jurisdiction to entertain collateral attacks on state court judgments. Constitutional questions arising in state proceedings are to be resolved by the state courts. If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court. Thereafter, recourse at the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court. The casting of a complaint in the form of a civil rights action cannot circumvent this rule, as absent a specific delegation "federal district court[s], as court[s] of original jurisdiction, lack[ ] appellate jurisdiction to review, modify, or nullify final order[s] of state court[s]."

*Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994) (quoting *Kimball v. Fla. Bar*, 632 F.2d 1283, 1284 (5th Cir. 1980); collecting cases; footnotes omitted)).

Mims cites no federal statute that provides an established exception to the *Rooker-Feldman* doctrine. *Cf. Miller v. Dunn*, No. 3:20-cv-759-E, 2020 WL 6504663, at *3 (N.D. Tex. Nov. 5, 2020) (Section 1983 is "not a specific delegation to the federal courts that upsets how constitutional determinations are reviewed in the state courts" and "allows a collateral attack on a state court judgment where, like here, a plaintiff's constitutional claims are 'inextricably intertwined' with the state court's rulings against him." (citing *Reed v. Terrell*, 759 F.2d 472, 473-74 (5th Cir. 1985) ("[T]his Court's review of the record in the instant case reveals that the plaintiffs' suit is 'patently an attempt to collaterally attack the validity of [the state court judgment].' A review of the plaintiffs' pleadings and arguments in the instant case reveals that this suit is 'inextricably intertwined' with the state court's awards against the plaintiffs. Thus, the district court did not err in dismissing the instant suit for want of jurisdiction." (quoting *Almon v. Sandlin*, 603 F.2d 503, 506 (5th Cir. 1979), then *D.C. Ct. App. v. Feldman*, 460 U.S. 462, 483 n.16 (1983); citation omitted)))).

And this jurisdiction-stripping doctrine applies even if the state proceeding has not concluded. As a panel of the United States Court of Appeals for the Fifth Circuit has explained,

[t]here is disagreement among the circuits as to whether all state proceedings, including appeals, must have concluded before the federal suit is initiated in order for *Rooker-Feldman* to apply. Indeed, this Court has taken inconsistent positions on the matter: In *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986), this Court applied *Rooker-Feldman* to bar a federal suit despite the pendency

of an appeal in state court; but in *Rowley v. Wilson*, 200 F. App'x 274, 275 (5th Cir. 2006) (per curiam), this Court declined to apply *Rooker-Feldman* because the case was on appeal to a state appellate court, observing that "[*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005),] tells us when a state court judgment is sufficiently final for operation of the *Rooker-Feldman* doctrine: when 'the state proceedings [have] ended.'"

Although *Hale* predated *Exxon*, the split in authority following *Exxon* on the question of finality suggests that that case did not "unequivocally" overrule *Hale*. *See Technical Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012) ("[F]or a Supreme Court decision to change our Circuit's law, it 'must be more than merely illuminating with respect to the case before [the court]' and must 'unequivocally' overrule prior precedent." (second alteration in original)). Further, the portion of *Exxon* quoted in *Rowley* – an unpublished opinion with limited precedential value under 5th Circuit Rule 47.5.4 – is found not in *Exxon*'s holding but in its description of the *Rooker* and *Feldman* cases, *see Exxon*, 544 U.S. at 291. *Exxon*'s holding refers only to "state-court judgments rendered before the district court proceedings commenced." *Id.* at 284. Accordingly, we appear to be bound by *Hale* pursuant to this Circuit's rule of orderliness. *See Technical Automation Servs. Corp.*, 673 F.3d at 405-07.

*Houston v. Venneta Queen*, 606 F. App'x 725, 731-32 (5th Cir. 2016); *see also Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 384 n.5 (5th Cir. 2017) ("In a case pre-dating *Illinois Central[ Railroad Co. v. Guy*, 682 F.3d 381 (5th Cir. 2012),] we found *Rooker-Feldman* to bar review of a state court judgment when the state court appeal was pending at the time the federal action was filed. *Hale v. Harney*, 786 F.2d 688, 689-91 (5th Cir. 1986). Contrary to *Illinois Central*'s explication of the doctrine, *Hale* suggests that a state court judgment need not be issued by a court of last resort for *Rooker-Feldman* to apply. Because of this apparent tension in our case law, we do not rely on this aspect of the doctrine to resolve the jurisdictional question before us now.").

Dkt. No. 7 (footnote omitted).

Mims responded by filing a second amended complaint on September 2, 2021.

*See* Dkt. No. 9. Mims's allegations are few. She again appears to challenge a prior

state court proceeding. *See id.* at 3 ("False judgment for possession never received

and invoice reinstatement of foreclosure, date 3/10/2005. Never seen closing services agreement never gave anyone permission to sell my home." (all caps omitted)); *id.* at 4 (alleging that the defendant "owes [her] [$]17,385.45 from Equity" and, further, that "I don't know who's in my home now. It's payed for in my name Thank God. It's my grandchildren home not theirs. My home.").

In addition to these alleged facts, Mims attaches assorted documents, including a marriage license, filings from a proceeding against her in a Dallas County justice court in 2005, and related mortgage documents. *See id.* at 6-28; Dkt. No. 9-1.

Considering this second amended complaint, the Court should dismiss this case with prejudice for Mims's failure to allege a plausible claim. This is Mims's third complaint in this proceeding. And it was filed after the Court notified her of the applicable pleading standards. Mims has therefore been given an opportunity to state her best case but has still failed to allege facts to state a claim that is plausible.

## Recommendation

The Court should dismiss this case with prejudice for failure to state a claim.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation

where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 7, 2021

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE